No. 3--01--0489

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2002

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, 
ex
 
rel
. ) of the 13th Judicial Circuit,

JAMES E. RYAN, Attorney General ) Grundy County, Illinois

of the State of Illinois, and )

LANCE R. PETERSON, State’s )

Attorney of Grundy County, )

Illinois, )

 )

Plaintiffs-Appellees, ) 

 )

v. ) No. 96--CH--16

 ) 

ENVIRONMENTAL WASTE )

RESOURCES, INC., a              )

Connecticut Corporation, )

 )

Defendant )

 )

(UNITED PACIFIC INSURANCE )

COMPANY, a foreign )

insurance company, and )

THE ESTATE OF FIORE F. )

D’ADDARIO, )
 Honorable

 )
 
Robert Marsaglia,

Intervenors-Appellants). )
 Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the Opinion of the court:

_________________________________________________________________

The plaintiff, the State of Illinois, requested a summary determination that the defendant, Environmental Waste Resources, Inc., (EWR) violated the closure and post-closure requirements of its operating permit when it ceased operations at its facility in Coal City, Illinois.  Intervenor United Pacific Insurance Company (United Pacific) requested a judicial determination of its liability under its surety contract with EWR.  The circuit court found that EWR was in violation of its permit.  The court also determined that under the surety contract, United Pacific could either pay the penal sum amount of the bond or perform the closure and/or post-closure activities.  The court stated that if United Pacific chose to perform on the bond, it would be required to pay the entire costs of performance, even if those costs exceeded the bond amount.  

The intervenors-appellants, United Pacific and the estate of Fiore F. D’Addario (estate), appeal.  They contend that: (1) the case is moot; (2) the State’s claim was barred by the doctrine of laches; (3) the finding regarding closure and post-closure activities was made in violation of the automatic bankruptcy stay provision of the U.S. Code (11 U.S.C. §362(a)(1) (1988)); (4) the finding regarding closure and post-closure activities was barred by factual issues; (5) the court’s determination of United Pacific’s liability, as surety, for environmental clean-up costs of the defendant was error; and (6) United Pacific should be completely discharged from liability on this matter.  After careful consideration, we affirm in part and reverse in part.

I. Background

EWR operated a hazardous waste disposal facility in Coal City, Illinois.  In July 1997, EWR filed for bankruptcy in the United States Bankruptcy Court in Connecticut.  In March 1998, the bankruptcy estate formally abandoned the Coal City facility.  EWR’s counsel withdrew from this litigation in September 1998, and EWR has been unrepresented ever since.     

EWR is owned by Ridan Corporation, which has also filed for bankruptcy.  Prior to his death, Fiore F. D’Addario was the owner of Ridan Corporation.  At approximately the same time that EWR filed for bankruptcy, the estate became the grantor of a trust created to facilitate closure of the Coal City facility.

United Pacific issued a surety bond to EWR in March 1993 to secure its closure and post-closure obligations, pursuant to the environmental regulations of the State of Illinois.

II. Facts

EWR operated its facility pursuant to an operating permit issued by the Illinois Environmental Protection Agency (IEPA).  Under the terms of the permit, if EWR closed the facility, it was required to comply with a detailed list of closure activities within 180 days of the closure.  Additional post-closure monitoring requirements were also detailed in the permit.

Prior to 1996, EWR was cited for various environmental violations.  In 1996, there was a fire at EWR’s facility.  Shortly after the fire, the State filed a complaint against EWR alleging various environmental violations.

In October 1996, EWR ceased accepting waste at the facility.  In February 1998, the IEPA requested that the United States Environmental Protection Agency (USEPA) take action at the facility under its authority pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §9601 
et
 
seq.
 (1982)).

In September 1998, the State filed a "Motion for Finding," requesting a judicial determination that EWR was not in compliance with the closure and post-closure requirements of its permit.  Shortly after the State’s filing, the estate and United Pacific filed motions to intervene, which were granted.  The record reveals correspondence between the State and the intervenors between 1996 and 2000, including discovery requests.

The USEPA completed removal of waste from the facility in September 1999.  In February 2000, the State renewed its "Motion for Finding" and again requested that the court find that EWR had failed to perform closure and post-closure activities as required by its permit.  In October 2000, the estate and United Pacific, as intervenors, filed a motion to strike the State’s motion and to dismiss the complaint.  

United Pacific also filed a motion for summary determination of its liability under the surety contract with EWR.  It asked the court to determine whether, if it chose to perform closure and/or post-closure activities as permitted by the contract, it would be liable for the total cost of the activities, even if that amount exceeded the penal bond amount.

The first page of the surety contract sets the maximum liability of United Pacific for closure and post-closure costs at approximately $1.24 million.  This page also states, "the limit of liability shall be the full amount of the penal sum."  The second page states that if the principal does not perform closure or post-closure activities the surety has two options: perform the activities itself or pay the amount of the penal bond into a trust fund.  A separate provision states that "[t]he liability of the Surety(ies) shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penal sum of the bond, but in no event shall the obligation of the Surety(ies) hereunder exceed the amount of said penal sum."  United Pacific’s motion requested a judicial determination that, if it elected to perform closure/post-closure activities, it would only be liable for such costs up to the amount of the bond.  The State argued that if United Pacific chose to perform the activities, it would be liable for the full cost of the closure/post-closure, even if that amount exceeded the penal bond sum.

In November 2000, the State moved for default and judgment.  In May 2001, the circuit court made a summary determination that EWR had failed to perform appropriate closure and post-closure activities.  The court also responded to United Pacific’s request for a declaratory judgment and found that under the surety contract, United Pacific was required to either pay the amount of the penal bond or, if it decided to perform on the bond, it would be required to pay the closure and post-closure costs in their entirety, even if the amount exceeded the penal bond amount.

III. Analysis

On appeal, the intervenors claim that: (1) the case is moot; (2) the State’s action was barred by the doctrine of laches; (3) the circuit court erroneously ruled on the State’s pursuit of a claim against EWR, in violation of the automatic stay provision of the bankruptcy code; (4) there were factual issues which precluded summary judgment on the closure and post-closure issue, (5) the court erred in finding that United Pacific’s obligation as surety could exceed the amount of penal bond sum; (6) United Pacific should be entirely discharged from liability under the contract.

A. Mootness

Initially we note that the intervenors have argued that we should not consider this case because it is moot.  A case is moot where it involves no actual controversy, rights, or interests of the parties.  
Forest Preserve District of Kane County v. City of Aurora
, 151 Ill. 2d 90, 600 N.E.2d 1194 (1992).  United Pacific asserts that the case is moot because EWR is bankrupt and has no corporate officers.  However, in order for the State to proceed against United Pacific there must be a determination of whether closure and post-closure activities were properly performed.  Therefore, since the State still has an interest in the outcome of this litigation, the cause is not moot.

B. Laches

The intervenors also assert that laches bars this action because the State waited too long before acting in this case.  An action is barred by laches when the lack of due diligence by one party prejudices the opposing party.  
Van Milligan v. Board of Fire & Police Commissioners
, 158 Ill. 2d 85, 630 N.E.2d 830 (1994).  Laches does not apply to governmental entities except in extreme circumstances.  
Van Milligan
, 158 Ill. 2d 85, 630 N.E.2d 830.

Here, the record reveals that the State took several actions regarding this matter.  In 1996, it filed the initial complaint.  In 1998, it filed a motion requesting the judicial determination regarding closure and post-closure activities.  The estate and United Pacific then sought to intervene.  The parties exchanged correspondence and various discovery requests were filed.  Based on these facts, we find no extreme circumstances that would warrant a finding that the State’s claim is barred by laches.

C. Automatic Bankruptcy Stay

The intervenors assert that the circuit court’s ruling should be reversed because the ruling was entered in violation of the automatic stay provisions of the bankruptcy code.

Once a party files for bankruptcy protection under the Bankruptcy Code, any pending action against the party is automatically stayed.  11 U.S.C. §362(a)(1) (1988).  However, despite the stay provisions, the government may pursue actions, including environmental regulation, that are part of its police power.  11 U.S.C. 362(b)(4) (1988).  This exception does not apply if the State is pursuing any action that is, in essence, an attempt to enforce a money judgment.  
In re Torwico Electronics, Inc.
, 131 B.R. 561 (1991); see also 
Ohio v. Kovacs
, 105 S. Ct. 705, 469 U.S. 274, 83 L. Ed. 2d 649 (1985).

Here, the State was not attempting to enforce a money judgment against EWR, and its action was a valid exercise of police power.  Therefore, the finding that EWR did not perform appropriate closure or post-closure procedures did not violate the bankruptcy stay.

D. Summary Determination of Closure/Post-Closure Activities

The intervenors also assert that factual questions precluded the court’s summary determination regarding whether closure and post-closure activities were properly performed.

The appellate court reviews summary determinations by the trial court 
de
 
novo
.  
Happel v. WalMart Stores, Inc.
, 199 Ill. 2d 179, 766 N.E.2d 1118 (2002).  
In granting summary judgment, the court reviews the pleadings, affidavits, answers and depositions on file, and views them in the light most favorable to the nonmoving party.  
Happel
, 199 Ill. 2d 179, 766 N.E.2d 1118
.  Summary judgment is appropriate if there is no circumstance under which the facts and reasonable inferences from the facts could state a cause of action.  
Happel
, 199 Ill. 2d 179, 766 N.E.2d 1118.

The closure procedures which EWR was required to perform were enumerated in its operating permit.  These procedures had to be completed within 180 days of the facility’s ceasing operation.  Various post-closure procedures and monitoring requirements were required to begin once the closure procedures were completed.

According to the pleadings, affidavits, and other documents before the court, EWR ceased accepting new waste at the facility in October 1996.  The evidence showed that EWR had not performed any closure procedures at the facility prior to the hearing on this matter, some four years after the closure.  The record further showed that except for the removal of hazardous waste by the USEPA, no environmental clean-up actions had been taken at the facility prior to the date of the hearing.  Additionally, EWR had not performed any of the post-closure actions required by the permit.  Therefore, the trial court’s summary determination that EWR failed to perform closure and post-closure requirements was appropriate.

E. Surety Liability

Next, United Pacific asserts that the trial court erred in determining that, if it chose to perform the required closure and/or post-closure activities, it would be liable for the entire cost of these activities, even if the amount exceeded the total amount of the penal sum of the bond.

The fundamental principle of surety law is that the surety is bound by the terms of its contract.  
Bolingbrook Park District v. National Ben-Franklin Insurance Co. of Illinois
, 96 Ill. App. 3d 26, 420 N.E.2d 741 (1981).  Surety contracts are to be strictly construed.  
Myers v. Health Specialists, S.C.
, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992).

Here, the contract on its face sets the maximum liability of United Pacific at approximately $1.24 million.  The contract further states that if United Pacific makes any payment or series of payments, it is not discharged from liability until it has paid out an aggregate amount equal to the penal sum of the bond.   Furthermore, the contract states that "in no event" shall the amount of United Pacific’s liability exceed the penal sum of the bond.  Based on this language in the contract and the long accepted principles of surety law, we conclude that the court erred in determining that United Pacific faces potential liability that exceeds the penal bond amount if it chooses to perform closure and/or post-closure activities.  Therefore, we hold that United Pacific’s liability, should it choose to perform closure and post-closure activities, is limited to the amount of the penal sum of the bond.

The State asserts that as a matter of public policy, if United Pacific chooses to perform closure and post-closure activities, it must pay the entire cost, even if the cost exceeds the penal sum amount of the bond.  It argues that such a policy would prevent a surety from beginning environmental work and then abandoning it before the work is finished because the penal amount has been expended.  However, interpreting the contract as the State desires would require us to create an exception to the long-standing law relating to sureties.  This we decline to do.  The appropriate governmental body to make the change the State desires is the legislature.
(footnote: 1)     

F. Discharge of Liability

United Pacific also asserts that it should be completely discharged from its liability under the contract because: (1) the State failed to provide timely notice of EWR’s failure to perform closure activities; (2) the State unreasonably rejected the intervenors’ tenders of performance; and (3) the State acted in bad faith when dealing with United Pacific.  These issues all exceed the scope of the specific determinations requested by the parties in this matter, and thus we decline to address them.

For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

SLATER and MCDADE, JJ., concur.

FOOTNOTES
1:
It should be noted that, based on the applicable regulations, an operator must demonstrate to the State that it has appropriate financial assurance to cover both closure and post-closure costs before it will be allowed to operate.  35 Ill. Adm. Code §724.243, 724.245 (2001).  The dollar amount of the penal bond must be adjusted if the estimated costs change.  35 Ill. Adm. Code §724.243(c)(7), 724.245(c)(7) (2001). Additionally, the State dictates the language of the surety contract.  35 Ill. Adm. Code §724.243(c)(2), 724.245(c)(2). (2001).