THE BOARD OF EDUCATION OF BATAVIA, Unit School District No. 101, Kane County, *et al.*, Plaintiffs-Appellants, v. JOHN A. CUNNINGHAM, as the Clerk of the County of Kane, *et al.*, Defendants-Appellees.

Second District   No. 2—03—0846

Opinion filed March 29, 2004.

John M. Izzo, Justino D. Petrarca, and Paul J. Ciastko, all of Scariano, Himes & Petrarca, Chtrd., of Chicago Heights, for appellants.

Meg Gorecki, State's Attorney, of St. Charles (Joseph F. Lulves, Assistant State's Attorney, of counsel), and Mary Katherine Moran, Special Assistant State's Attorney, of St. Charles, for appellees.

JUSTICE McLAREN delivered the opinion of the court:
Plaintiffs, the Board of Education of Batavia (Board), Unit School District No. 101, Kane County, State of Illinois (District), and Barbara Douglas, appeal the trial court's order granting summary judgment in favor of defendants, John A. Cunningham, as the clerk of the County of Kane, Illinois (Clerk), and David J. Rickert, as the treasurer of the County of Kane, State of Illinois, in this tax levy case. We affirm.

## I. BACKGROUND

Before a recitation of the facts of this case, we find it necessary to give a brief overview of the taxing structure applicable to this case. The school district's property tax is made up of several individual taxes. We will refer to the rates for these taxes as individual fund rates. The referendum at issue in this case sought to increase the tax rate for the educational purposes tax, which is an individual tax. There is also a maximum aggregate rate, which limits the total tax rate that the school district can levy. Therefore, the aggregate of the individual fund rates cannot exceed the maximum aggregate rate. If an individual fund rate is increased by referendum, there is also an impact on the aggregate maximum rate. The calculations used to adjust the maximum aggregate rate based on the increase of an individual fund rate are what is at issue in this case. With this background in mind, we recite the facts of this case.

On April 1, 2003, the voters of Batavia Unit School District No. 101, Kane County, Illinois, passed a referendum authorizing a tax rate increase in the District's educational fund. The ballot question presented to the voters read as follows:

"Shall the maximum annual tax rate for the educational purposes of Batavia Community Unit School District Number 101, Kane County, Illinois, be increased and established at *3.34 percent* upon all the taxable property of said District at the value, as equalized or assessed by the Department of Revenue, instead of *3.18 percent*, the existing maximum rate otherwise applicable to the next taxes to be extended for said purposes?

a) The approximate amount of taxes extendible for educational purposes under the proposed rate is $25,143,520, and the approximate amount of taxes extendible for Educational purposes under the existing maximum rate is $23,939,040, representing an increase of 5.03 percent.

b) The percentage of increase between the maximum rate at which the Education tax may be levied if the proposition is approved and the annual rate at which such tax is currently levied is 19.85 percent.

c) The total dollar amount of most recently approved annual budget of said District is $49,038,561. If increased by the amount of additional tax which may be levied if said proposition is approved, the total dollar amount of this budget will be $53,202,298, representing an increase in the total dollar amount of this budget of 8.49 percent." (Emphases added.)

After the referendum passed, the Board passed a supplemental budget and a supplemental levy pursuant to section 17—3.2 of the School Code (105 ILCS 5/17—3.2 (West 2002)). The Clerk extended the levy. Part of the calculation required to extend the levy is contained in section 18—230 of the Property Tax Extension Limitation Law (Tax Limitation Law) (35 ILCS 200/18—230 (West 2002)). The section 18—230 calculation requires use of the "rate increase approved." The rate increase approved was 0.16%, which was determined by calculating the difference between the old maximum educational fund tax rate (3.18%) and the newly approved maximum educational fund tax rate (3.34%). The Clerk extended the taxes for the District to the extent allegedly allowed within the limitations contained in the Tax Limitation Law (35 ILCS 200/18—185 *et seq.* (West 2002)).

On May 1, 2002, plaintiffs filed a complaint for declaratory judgment and *mandamus* against defendants, claiming that the "rate increase approved" by the referendum for purposes of the section 18—230 calculation was higher than the "rate increase approved" calculated by the Clerk. Plaintiffs claimed that, rather than the 0.16 extended, the increase should have been 0.5531, which was the difference between the last rate actually extended for the District's educational fund (2.7869%) and the new maximum rate provided in the referendum (3.34%). Plaintiffs argued that the Clerk's erroneous

calculation resulted in a loss of millions of dollars of revenue to the District and its constituents.

The parties filed motions for summary judgment. After hearing arguments, the trial court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. The trial court stated that the Clerk correctly calculated the increase at 0.16, extended the school district's tax levies, and applied the provisions of the Tax Limitation Law (35 ILCS 200/18—185 *et seq.* (West 2002)). This timely appeal followed.

## II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred by granting defendants' motion for summary judgment because the rate increase approved should have been measured from the current effective rate of 2.7869% rather than from the existing maximum rate of 3.18%, which would have resulted in an increase of 0.5531 rather than an increase of 0.16%. Plaintiffs argue that the Clerk erroneously applied the limits provided in the Tax Limitation Law. Defendants argue that the referendum approved an increase of the District's levy authority under section 18—230 of the Tax Limitation Law (35 ILCS 200/18—230 (West 2002)), but not beyond the limitations provided in section 18—205 of the Tax Limitation Law (35 ILCS 200/18—205 (West 2002)). Thus, according to defendants, the Clerk properly increased the existing maximum aggregate rate by using the difference between the old maximum rate for the educational purposes tax of 3.18 and the new maximum rate of 3.34, which is a "rate increase approved" of 0.16.

■ Summary judgment is properly granted where "the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 129 (2003). Where both parties file cross-motions for summary judgment, they agree that no material issue of fact exists and that only a question of law is involved. *Reece v. Board of Education*, 328 Ill. App. 3d 773, 777 (2002). Thus, we are invited to decide the issues presented as a question of law. *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 134 (2001). Our review of the trial court's grant of summary judgment is *de novo*. *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002).

■ Section 18—230 provides that, whenever a district approves a tax rate increase by referendum, the aggregate extension base is adjusted by multiplying it by a "rate increase factor." That factor is a

fraction. The numerator of the fraction is the total combined rate for the funds that made up last year's aggregate extension, plus "the rate increase approved." The denominator is the total combined rate for the funds that made up last year's aggregate extension. Section 18—230 provides in pertinent part:

> "Rate increase or decrease factor. When a new rate increase or decrease first effective for the current levy year has been approved by referendum, the aggregate extension base, as adjusted in Section 18—215 and 18—220, shall be multiplied by a rate increase (or decrease) factor. The numerator of the rate increase (or decrease) factor is the total combined rate for the funds that made up the aggregate extension for the taxing district for the prior year plus the *rate increase approved* or minus the rate decrease approved. The denominator of the rate increase or decrease factor is the total combined rate for the funds that made up the aggregate extension for the prior year." (Emphasis added.) 35 ILCS 200/18—230 (West 2002).

■ The question that we must answer is what rate increase was approved by the referendum for purposes of section 18—230. Thus we must construe the phrase "rate increase approved" as used by section 18—230. The primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507 (2003). The most reliable indicator of the legislature's intention is the language of the statute at issue. *Carver*, 203 Ill. 2d at 507. We must give the statutory language its plain and ordinary meaning and we must afford the statutory language the broadest, rather than the narrowest, possible meaning to which it is susceptible. *Carver*, 203 Ill. 2d at 507. We review the construction of a statute *de novo*. *Carver*, 203 Ill. 2d at 506-07.

■ Plaintiffs argue that section 17—3.4 of the School Code (105 ILCS 5/17—3.4 (West 2002)) compels us to conclude that "rate increase approved" refers to the difference between the currently levied rate and the new maximum rate approved by a referendum. Plaintiffs point out that section 17—3.4 requires not that the old maximum rate be included on a tax rate increase referendum, but only that the currently levied rate, along with the proposed new maximum rate, be included. Thus, according to plaintiffs, "rate increase approved" refers to the difference between the currently levied rate and the rate taxpayers might expect to pay after the referendum passes, that is, the new maximum rate. We disagree.

We believe the plain and ordinary meaning of the phrase "rate increase approved" requires use of the *actual rate increase approved,*

not the difference between the current rate levied and the rate taxpayers might expect to pay after the referendum is passed. A referendum is not required to increase an individual fund rate if the individual fund rate is not currently at its maximum. An increase in an individual fund rate may not be possible because to do so could cause the aggregate levied rate to exceed the maximum aggregate rate. However, even in such a situation, an individual fund rate could be raised if another individual fund rate were lowered such that the maximum aggregate rate was not exceeded. Therefore, the purpose of a referendum seeking an increase in an individual fund rate is to seek approval for increasing the maximum rate for that fund, not to seek approval simply to increase the rate; such approval is not necessary if the individual fund rate is not currently at its maximum. Thus, the rate actually approved through such a referendum is the difference between the old maximum rate and the new maximum rate.

In this case, the referendum unambiguously asks for a rate increase approval of 0.16, not of 0.5531. The referendum states "[s]hall the maximum annual tax rate." This language indicates that an approval was being sought to increase the maximum annual rate from 3.18 to 3.34, not to raise the currently levied rate to a new rate that would be equal to a new maximum rate of 3.34. However, as we have stated above, even if the referendum asked for approval to raise the currently levied rate to a new maximum, the rate increase *actually approved* would still be the difference between the old maximum rate and the new maximum rate. Plaintiffs now seek an increase in the effective rate by using a rate neither set forth nor approved by the referendum. Although there was mention of the "last rate extended," it was not specified in the referendum. Contrary to the claims of plaintiffs, the taxpayers were not asked to approve a rate increase of .5531 cents.

In addition, we do not find that section 17—3.4 requires a reading that "rate increase approved" should be measured from the currently levied rate. There are other logical reasons that a referendum to increase a school tax need not contain the old maximum rate at which the tax may be levied. For example, the legislature could have assumed that voters have knowledge of the current maximum rate because they would likely have approved the current maximum on a previous referendum. However, a voter may not have knowledge of the currently levied rate because, as plaintiffs point out, the currently levied rate is partly a function of the current aggregate maximum rate. That is, plaintiffs may be unable to charge the maximum rate on any individual tax fund because to do so could cause them to exceed the maximum aggregate tax rate. An average voter would likely be

unaware of what the currently levied rate is because it can change based on the new aggregate maximum rate and other factors. Furthermore, section 17—3.4 makes no mention of any definition of "rate increase approved" and we refuse to read the section as somehow implying any such definition. Therefore, the Clerk properly used 0.16 as the "rate increase approved" for purposes of applying section 18—230.

■ Finally, defendants contend that section 18—205 would prohibit the Clerk from using 0.5531 in his calculations because the calculation would then yield an extension limitation increase that would exceed the cap provided by section 18—205. Section 18—205 of the Tax Limitation Law limits any extension increase to 5% a year or the percentage increase in the consumer price index (CPI), whichever is less, unless a greater increase is approved by a distinct referendum. The section provides in relevant part:

"Referendum to increase the extension limitation. A taxing district is limited to an extension increase of 5% or the percentage increase in the Consumer Price Index during the 12-month calendar year preceding the levy year, whichever is less. A taxing district may increase its extension limitation for a current levy year if that taxing district holds a referendum before the levy date at which a majority of voters voting on the issue approves adoption of a higher extension limitation." 35 ILCS 200/18—205 (West 2002).

Section 18—205 then provides the manner in which the referendum must be presented. 35 ILCS 200/18—205 (West 2002). The CPI percentage increase for 2002 was 1.6% and for 2001 was 2.8%. These percentages appear to be lower than the extension increase as calculated by plaintiffs. Thus, plaintiffs would have had to conform to the requirements of the Tax Limitation Law if they were to prevail. They did not. The parties do not contest whether the application of the 0.16 rate increase exceeds the CPI and we need not address that issue.

## III. CONCLUSION

For the foregoing reasons the judgment of the circuit court of Kane County granting summary judgment to defendants is affirmed.

Affirmed.

BOWMAN and KAPALA, JJ., concur.