THE PEOPLE *ex rel.* RICHARD DEVINE, as State's Attorney of Cook County, *et al.*, Plaintiffs-Appellants, v. SUBURBAN COOK COUNTY TUBERCULOSIS SANITARIUM DISTRICT *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—03—2815

Opinion filed June 30, 2004.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Donna M. Lach, and Maureen O. Hannon, Assistant State's Attorneys, of counsel), for appellants.

Chuhak & Tecson, P.C., of Chicago (James R. Pranger and Edward C. Richard, of counsel), for appellee Suburban Cook County Tuberculosis Sanitarium District.

McDermott, Will & Emery (Michael A. Pope and Elizabeth B. Herrington, of counsel), and Piper Rudnick, L.L.P. (Thomas F. Geselbracht, of counsel), for appellee Hinsdale Meadows Venture.

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal involves the statutory authority of the Suburban Cook County Tuberculosis Sanitarium District (the District) to sell 24¹/₂ acres of its 36 acres of land in Hinsdale without the approval of the Board of Commissioners of Cook County (the County Board). On cross-motions for summary judgment, the circuit court granted the District's motion, ruling that it had implied authority to sell the property under the Tuberculosis Sanitarium District Act (70 ILCS 920/1 *et seq.* (West 2002)) (the Act). For the reasons stated herein, we affirm the judgment of the circuit court.

The Suburban Cook County Tuberculosis Sanitarium facilities in Hinsdale include a functioning hospital and a parking lot that together cover approximately 12 acres of the 36-acre parcel. RM Health Providers (RM) currently leases the hospital from the District and provides health care services in that facility. On June 28, 2002, the District

agreed to sell the remaining 24½ acres of property at the southeast corner of 55th Street and County Line Road in Hinsdale to Edward R. James Partners (James Partners) for $15.25 million. That portion of the property included several residences, a parking facility and vacant land. James Partners was later succeeded in interest by Hinsdale Meadows Venture, which plans to build 36 single-family homes on the property. After the sale was finalized in October 2002, Hinsdale Meadows Venture arranged for demolition of the existing structures on the property.

On April 7, 2003, the People of the State of Illinois, through Cook County State's Attorney Richard Devine, and Cook County (collectively, the County) filed a complaint against the District, James Partners and Hinsdale Meadows Venture in *quo warranto*, challenging the District's power to sell the property and also seeking injunctive or declaratory relief.[1] The County contended that the land was public property and that by statute, only the County Board had the authority to sell the property if the District found the sanitarium facilities were no longer needed for treatment of tuberculosis patients.

The District responded that it had the authority to sell the property without the County Board's cooperation or approval. The District also raised the affirmative defense of *laches*, contending that on July 24, 2002, the District's president, Terrance Carr, sent a letter to County Board president John Stroger informing the County Board, *inter alia*, of the District's plans to sell the 24½-acre parcel. In the letter, Carr stated that the District had negotiated the sale of the excess property that was "not required for the District to carry out its [tuberculosis] treatment mission." The County does not dispute Carr's letter to Stroger but asserts that the correspondence did not provide sufficient details about the pending sale.

In a deposition, Carr stated he had been president of the District's board of directors since 2000. Carr said that the District wanted to lease or sell the property because it was vacant land and board members were concerned that the District would be liable for injuries on the property. Carr stated that the two single-family residences, town houses, personnel building and garage on the 24½-acre parcel

---

[1]Although the complaint listed the Village of Hinsdale as a codefendant, the village has been dismissed from the suit. Prior to this appeal, the village had authorized its fire department to conduct training exercises on the buildings to be destroyed. The village has agreed not to do so pending this case's outcome. For similar reasons, Brandenburg Industrial Services Company, which was hired to demolish the buildings on the property, also is not a party to this appeal.

were not used for the treatment of tuberculosis patients and that the District had unsuccessfully queried various health care organizations and governmental bodies about their interest in purchasing the land.

Carr testified that the hospital and facilities on the Hinsdale property are necessary to treat tuberculosis patients and that the District did not recommend that those facilities be closed. When asked about a 1996 newspaper article reporting that the hospital had stopped admitting patients with the exception of the ventilator support unit, Carr replied that the hospital did not stop in-patient admissions for tuberculosis patients and that the facility maintained one intensive care room and two additional rooms for that use. Carr stated that Stroger did not respond to his letter until February 2003, when Stroger telephoned Carr and told him that the District lacked the legal authority to sell the property.

The record also includes the deposition testimony of Dr. James Gallai, who has treated tuberculosis patients at the Hinsdale facility and who serves as the District's clinical director and also is a consultant to physicians in Cook County on the topic of tuberculosis. Dr. Gallai testified that while tuberculosis sanitariums historically have been located on large parcels of land to isolate the patients from the rest of the community, and while the contagious disease generally has warranted the patients' isolation from the general population, physicians now treat the condition with various antibiotics.

Dr. Gallai testified the Hinsdale facility is necessary to treat tuberculosis as a form of bioterrorism, noting that a tuberculosis outbreak in New York City in the early 1990s caused between 3,000 and 4,000 tuberculosis cases per year for several years. When the District leased the hospital facility to RM, Dr. Gallai recommended that several beds remain available for treatment of tuberculosis patients. The three hospital rooms set aside for tuberculosis patients at the Hinsdale facility feature negative air pressure to keep air inside the room. Dr. Gallai noted that six outpatient tuberculosis facilities, including a mobile clinic, operate in the Chicago suburbs.

Dr. Gallai stated that in the year or two prior to his deposition, one or two pediatric cases required in-patient care at one of the area tuberculosis facilities, and another patient with "active" tuberculosis required immediate psychiatric care. Dr. Gallai stated that those patients were already at another facility when their treatment for tuberculosis became necessary and, therefore, the Hinsdale facility was not used for treatment of those patients. Dr. Gallai stated that had those patients been admitted to the Hinsdale facility, he, as opposed to an RM staff member, would have treated them. Dr. Gallai stated that no tuberculosis patients had been admitted to the Hinsdale

facility in the last three years, and he did not know if any were admitted in the four or five years before that. Dr. Gallai stated that the District has never recommended closing the Hinsdale facility.

The parties filed cross-motions for summary judgment on the issue of the District's authority to sell the property. The County contended that when the District decided to sell the property, it made a *de facto* finding that the property was no longer needed to serve residents suffering from tuberculosis and that such a finding vested the County Board with authority to determine the use of the sanitarium facilities. The County asserted that as a non-home-rule unit of government, the District has only the powers enumerated in the Act or those that arise by necessary implication, and the County pointed out that the Act's only reference to the sale of property (70 ILCS 920/5.2 (West 2000)) indicates that such a transaction requires the County Board's approval. The County also argued that the defense of *laches* is only available against the government in certain circumstances.

The District attached to its motion for summary judgment Carr's affidavit detailing its ownership of real estate in several communities and its sale of those properties without the County Board's approval.[2] Also attached to the District's motion was a June 1, 1999, letter in which the District informed the County Board that the District was "in the process of discussing the ideas and plans of several health care organizations for the development of a Continuing Care Retirement Community" on approximately $24^{1}/_{2}$ acres of the Hinsdale property. Carr's affidavit stated that the District unsuccessfully attempted to market the property to various health care organizations.

In a written opinion, the circuit court granted the District's motion for summary judgment, finding that no genuine issue of material fact existed that the District had the implied authority under the Act to sell the property. The court noted that the District continues to own approximately 12 acres of land on the parcel and operates an in-patient sanitarium facility. The court also held that the County was estopped from attempting to void the sale because it did not timely assert its claim of the right to approve the transaction. The court denied the County's motion for summary judgment and its motion to dismiss the District's *laches* defense and entered summary judgment in favor of the District. The circuit court did not address the merits of the County's request for injunctive relief because the parties agreed not to physically alter the property pending the resolution of the District's authority to sell the land.

---

[2]Hinsdale Meadows Venture filed a summary judgment motion adopting the District's arguments.

On appeal, the County contends that the circuit court erred in granting summary judgment to the District because the District did not follow the Act's provisions governing the disposal of unused real estate. The County asserts that the Act does not grant to the District the authority to sell the property, either expressly or by implication, and that the County Board is to determine the use of the sanitarium facilities. The County also argues that the District's affirmative defense of *laches* does not apply.

Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits and exhibits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *General Casualty Co. of Illinois v. Carroll Tiling Service, Inc.*, 342 Ill. App. 3d 883, 889, 796 N.E.2d 702, 706-07 (2003). Where, as here, the parties have filed cross-motions for summary judgment, they agree that no factual issues exist and that the case presents only the need for the resolution of legal issues; however, this court must determine for itself that no factual issues exist that would preclude summary judgment, and, if such factual issues are absent, the court may determine the issues presented as questions of law. *General Casualty*, 342 Ill. App. 3d at 889-90, 796 N.E.2d at 707. Therefore, our review is *de novo*. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000).

To consider the County's contentions, we first set out the provisions of the Act relevant to those arguments. Under section 5 of the Act, when part of the sanitarium's facilities are vacant and not needed for the treatment of tuberculosis patients, the District's board of directors may extend the use of the facilities for the care of persons with pulmonary diseases other than tuberculosis or may rent the facilities to a governmental body, municipal corporation or nonprofit organization that cares for the physically or mentally ill or provides services in that area. 70 ILCS 920/5 (West 2000). Such use is allowed only when sufficient sanitarium facilities are maintained to care "for all persons afflicted with tuberculosis for whose care and treatment the district is responsible." 70 ILCS 920/5 (West 2000).

■ Section 5.2 of the Act, titled "Closing sanitarium—Use of facilities—Sale—Continuation of board—Services," states in pertinent part:

> "If the [District's] board of directors finds that it is no longer necessary to provide an in-patient facility to serve the residents suffering from tuberculosis, it may recommend to the county board that the tuberculosis sanitarium established and maintained in the district under the Act be closed.

When such a recommendation is received, the county board shall determine what use should be made of the sanitarium facilities. *** [T]he county board may, subject to the provisions of this section, use the facilities for other district purposes, may lease them to public or private agencies or may sell them. If the tuberculosis sanitarium facilities are leased to a public or private agency other than the county, or are sold, then such leasing or sale must be for a consideration at least equal to the fair market value or fair rental value. If the county board uses such facilities for other purposes, then the use shall be for a consideration acceptable to the board of directors and the county board." 70 ILCS 920/5.2 (West 2000).

The County argues that the District's authority to sell the property is not enumerated in the Act and, therefore, its sale of the property was *ultra vires*. The County asserts that because the $24^{1}/_{2}$-acre parcel is no longer needed for the treatment of tuberculosis patients, section 5.2 of the Act allows the lease or sale of the land by the County Board and not by the District. The District responds that section 5.2 of the Act only applies if the District finds it no longer necessary to provide a tuberculosis treatment facility and if the District then recommends to the County Board that the facility be closed. The District asserts that because it took neither action, section 5.2 is inapplicable.

The County replies that because no tuberculosis patients have been treated at the facility in the last several years, the District has engaged in a *de facto* closing of the in-patient sanitarium facilities, thus triggering the County Board's involvement under section 5.2. The County argues that the District has effectively determined that tuberculosis treatment is no longer necessary at the Hinsdale site and points out that the District offers services through other facilities in the state, as contemplated in section 5.2 of the Act.

The testimony of Carr and Dr. Gallai indicates that a small portion of the Hinsdale facility is dedicated to the care of tuberculosis patients. Their testimony reveals that an in-patient facility continues to exist, albeit on a very limited basis, for the purpose of tuberculosis treatment. As evidenced by the County's contention that the District's actions constitute a *de facto* closing, it is uncontroverted that the District has not recommended closing the facility. Because the District has not recommended to the County Board that the in-patient tuberculosis facility in Hinsdale be closed, the provisions of section 5.2 are not invoked.

In the facility that the District leases to RM, the District continues to dedicate a portion of the space for the treatment of tuberculosis patients when the need arises. The County contends that section 5 of the Act addresses the present situation, *i.e.*, when a portion of the

facilities are vacant and are not needed to care for tuberculosis patients. The County also argues that tuberculosis patients are not being treated at the facility, citing Dr. Gallai's testimony that such patients have been treated at other hospitals.

The County points out that pursuant to section 5, the District may open the facility to other types of patients or rent the facility to an organization that offers such treatment, and the County asserts that the 24½-acre parcel only can be used in that manner. However, the County attempts to combine the portion of section 5 that addresses a vacancy of a portion of the sanitarium property with the language in section 5.2 that gives the County Board the authority to determine what use should be made of the tuberculosis sanitarium facilities should the facility cease operations. Section 5.2 vests the County Board with the authority to sell the property *if the District recommends that the facilities be closed.* It is uncontroverted that the District has not recommended such closure, and despite the County's suggestion to the contrary, the Act does not require that, if the District determines that a portion of the sanitarium facilities is not needed, the County Board can decide how that excess property shall be used. The Act does not give the County Board the ability to sell sanitarium property if a portion of the property includes a facility for tuberculosis treatment. Accordingly, we reject the County's reading of sections 5 and 5.2 of the Act.

■ The parties agree that the District, as a non-home-rule unit of government, possesses only the specific powers granted in the Act or those powers that arise by necessary implication. Ill. Const. 1970, art. VII, § 7; see also *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 255, 790 N.E.2d 832, 840 (2003). The County argues that section 5.2 of the Act expressly grants to the County Board the power to sell property, an ability that is not included in the District's enumerated powers, and points out that the Illinois legislature has affirmatively granted the power to sell property to other special districts, *e.g.*, as stated in the North Shore Sanitary District Act (70 ILCS 2305/8 (West 2000)) and the Mosquito Abatement District Act (70 ILCS 1005/7.2 (West 2000)). The County contends that the omission of the ability to sell real estate from the Act indicates that the legislature intended not to vest the District with that power.

The District contends that its power to sell property is necessarily incidental to its enumerated powers, including the ability to enter into contracts and acquire and hold real estate "necessary for the corporate purposes." 70 ILCS 920/3 (West 2000). The District contends that without the implied authority to sell real estate, it would lack the power to dispose of any portion of the sanitarium property that is no

longer needed for tuberculosis treatment. The District argues that the sale of the excess property in this case was necessary to serve the District's statutory purposes and that the sale converted the land to a beneficial use.[3]

The Act is clear that if the District finds the tuberculosis sanitarium to be no longer necessary and recommends to the County Board that the facility be closed, the County Board shall determine the land's future use and possibly sell the property. However, the fact that the power to sell property is expressly granted to the County Board in that situation does not mean that the District cannot exercise the ability to sell the property in a different circumstance. Here, the District seeks to sell a portion of real estate that is no longer used for the treatment of tuberculosis patients. Although the sale of real estate is not among the District's enumerated powers, the District's ability to dispose of unneeded property is necessarily incidental to its express powers.

The County asserts that such a result ignores the County's public interest in the sanitarium property. The County's contention rests on the premise that the District would leave the land at issue unused and that the District therefore would fail to "fulfill its duty to manage the property and/or meet the corporate purpose for which it was created." The District's decision to obtain more than $15 million for real estate that is no longer used does not connote mismanagement or waste. The County goes on to question the limitation of the County Board's involvement in the District, complain that the District's directors are not elected officials, and argue that the future of the majority of the sanitarium property should not be left to the "unfettered discretion of a five-member appointed District Board." However, as the County notes in its reply brief, the District's board of directors are "appointed

---

[3]The District also claims that section 10(a) of article VII of the Illinois Constitution expressly authorizes it to enter into a contract for the sale of property. That section authorizes units of local government to "contract and otherwise associate with individuals, associations, and corporations in any manner not prohibited by law or by ordinance." Ill. Const. 1970, art. VII, § 10(a). The District argues that provision bestows the power to contract with a private party. We do not find that section provides express authority for the District's actions; rather, it addresses situations of mutual ventures between local governments using their already-existing powers. See *Village of Lisle v. Village of Woodridge*, 192 Ill. App. 3d 568, 577, 548 N.E.2d 1337, 1343 (1989) (section 10(a) authorizes "municipalities to enter into cooperative agreements, but only to the extent that the agreement encompasses subject matter over which the municipalities already have authority").

by the presiding officer of the county board with the advice and consent of the county board." 70 ILCS 920/3 (West 2000).

The County repeatedly asserts that if the legislature had intended to give the District the power to sell real estate, it would have expressly done so. We note that, likewise, had the legislature intended that the County Board direct the use of the tuberculosis sanitarium property in any situation other than the closure of the entire facility, the legislature would have so indicated in the Act. See *Board of Education v. Cunningham*, 346 Ill. App. 3d 1027, 1031, 806 N.E.2d 1219, 1222 (2004) ("[t]he most reliable indicator of the legislature's intention is the language of the statute at issue"). Having found that the District possessed the incidental power to sell a portion of the Hinsdale property, we affirm the circuit court's granting of the District's motion for summary judgment and the denial of the County's motion for summary judgment.

Although they are not necessary to our disposition, we briefly address the parties' remaining assertions. The County challenges the circuit court's finding that it was estopped from contesting the District's actions due to the July 2002 letter to Stroger. The County asserts that the letter did not disclose the prospective purchaser's identity or provide a date for the sale of the property. The County also points out that the District indicated it would lease or sell the property to a buyer in the health care field, as opposed to a real estate developer. However, the basis of the County's complaint is not that the District sold a portion of its Hinsdale property to an improper party but, rather, that the District lacked the authority to sell real estate. Carr's July 2002 letter to Stroger adequately notified the County Board that the District had negotiated the sale of the 24½-acre parcel, noting that the property was "not required for the District to carry out its [tuberculosis] treatment mission."

■ Moreover, we reject the District's affirmative defense of *laches*. An action is barred by *laches* when the lack of due diligence by one party prejudices the opposing party. *People ex rel. Ryan v. Environmental Waste Resources, Inc.*, 335 Ill. App. 3d 751, 755, 782 N.E.2d 291, 295 (2002). The District contends that the County Board did not object to the sale of the property or the method by which the sale occurred until February 2003, several months after the transaction was completed, and that the County Board therefore cannot now raise its objection to the sale. While the record reveals that to be true, the doctrine of *laches* applies to governmental entities only in extreme circumstances and is applied against public officials with reluctance. *Ryan*, 335 Ill. App. 3d at 755, 782 N.E.2d at 295; *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 661, 720 N.E.2d 672,

682 (1999). As the supreme court noted in *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 90, 630 N.E.2d 830, 833 (1994), the imposition of *laches* in this manner can impair the functioning of governmental bodies and result in the loss of significant public interests and thus is applied to the exercise of governmental powers only under "compelling circumstances." See also *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 448, 220 N.E.2d 415, 426 (1966). For that reason, we agree with the County that the District should not have been able to raise the affirmative defense of *laches*.

In summary, it is undisputed that a portion of the hospital facility on the Hinsdale property remains devoted to the treatment for tuberculosis patients and that the District has not recommended closing the sanitarium facilities. Therefore, the County Board's power to determine the use of the sanitarium property and sell the real estate has not been triggered. Accordingly, the circuit court's ruling of summary judgment in favor of the District is affirmed.

Affirmed.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.