2024 IL App (1st) 240082

SECOND DIVISION
September 3, 2024

No. 1-24-0082

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CONCRETE STRUCTURES/SACHI, J.V.; CONCRETE STRUCTURES OF THE MIDWEST, INC.; and SACHI CONSTRUCTION, INC., | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
|     Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | No. 2017 CH 13778 |
| CLARK/BULLEY/OVC/POWER; PRAIRIE DISTRICT3 PARTNERS; THE METROPOLITAN PIER AND EXPOSITION AUTHORITY; CLARK CONSTRUCTION GROUP, LLC; BULLEY & ANDREWS; OLD VETERAN CONSTRUCTION, INC.; McKISSACK & McKISSACK MIDWEST, INC.; GOETTSCH PARTNERS, INC.; MOODY NOLAN, INC.; POWERS AND SONS CONSTRUCTION COMPANY, INC.; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; FEDERAL INSURANCE COMPANY; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; ZURICH AMERICAN INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY, and UNKNOWN NECESSARY PARTIES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Anthony C. Kyriakopoulos, Judge Presiding. |
|     Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Reyes and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    This construction dispute arises from a general contractor's failure to pay a subcontractor for concrete work that the subcontractor performed during the construction of a large hotel connected to Chicago's McCormick Place convention center. The construction project was funded by a local government entity existing under the laws of the state of Illinois. After the general contractor ignored multiple requests for payment from the subcontractor, the subcontractor recorded a public lien in the amount outstanding against the general contractor, local government entity, and other parties and filed suit against them shortly thereafter. The circuit court ordered arbitration. At arbitration, the panel awarded the subcontractor the amount outstanding on the invoice along with other compensation and found that the subcontractor was the prevailing party. The circuit court affirmed this award. Subsequently, the subcontractor requested the circuit court to grant it prejudgment interest and attorney fees under section 23 of the Mechanics Lien Act (770 ILCS 60/23 (West 2022)). The circuit court denied this request, and we affirmed. *Concrete Structures/Sachi, J.V. v. Clark/Bulley/OVC/Power*, 2023 IL App (1st) 230015-U, ¶ 22. The subcontractor then sought prejudgment interest under section 2 of the Interest Act (815 ILCS 205/2 (West 2022)) and under section 2 of the Public Construction Bond Act (Bond Act) (30 ILCS 550/2 (West 2022)), as well as attorney fees under the language of the bond at issue. The circuit court denied both, and the subcontractor appealed. For the following reasons, we affirm.

¶ 2                                   BACKGROUND

¶ 3    In January 2015, the Metropolitan Pier and Exposition Authority (MPEA), a local government entity, contracted with Prairie District[3] Partners (PD3) to design and build a 41-story

hotel on land owned by MPEA.[1] PD3 hired Clark/Bulley/OVC/Power (CBOP) to act as the general contractor for the project. PD3 also provided payment and performance bonds issued by several insurance companies (hereinafter "sureties").[2] The terms of the payment bond at issue in this case provide, in relevant part, as follows:

"§ 7 When a Claimant has satisfied [certain procedures], the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant."

---

[1]We take the majority of the background and procedural posture from our prior decision in *Concrete Structures/Sachi, J.V.*, 2023 IL App (1st) 230015-U, as it provides context germane to this appeal.

[2]"A payment bond generally provides that if the contractor does not pay its subcontractors and material suppliers, the surety will pay them." *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 7 (citing *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F. Supp. 901, 903 (C.D. Ill. 1987)). "In contrast, a 'completion bond' (also known as a 'performance bond') provides that if the contractor does not complete a project, the surety will pay for its completion." *Id.*

¶ 4    In June 2015, CBOP hired Concrete Structures/Sachi, J.V. (Concrete Structures) to perform concrete work on the project, which it did perform. CBOP did not pay Concrete Structures for its work. Concrete Structures filed a bond claim, and CBOP responded as follows:

> "The information you have provided to date is not sufficient to establish liability under the bond. Therefore, we must inform you that at this time we consider no portion of the amount claimed to be undisputed. The basis for challenging the disputed amount is lack of substantiation. Therefore, to facilitate our independent investigation of the claim, we request that you fill out and return the enclosed claim form, attaching copies of all documents requested in the claim form."

¶ 5    After multiple unsuccessful payment demands, Concrete Structures served a mechanic's lien in the amount of $9,247,203 against the hotel project, MPEA, PD3, and CBOP, pursuant to section 23 of the Mechanics Lien Act. On October 13, 2017, Concrete Structures filed a four-count complaint against those parties and others. Count I requested an accounting under section 23 of the Act; count II alleged a breach of contract claim against CBOP; count III asserted a bond claim against Concrete Structures' insurers; and count IV alleged an unjust enrichment claim against MPEA, PD3, CBOP, and those parties' joint venture partners. Under the arbitration clause in its contract with Concrete Structures, CBOP moved to compel arbitration on counts II and IV. The circuit court granted CBOP's motion and stayed counts I and III pending arbitration.

¶ 6    The matter proceeded to arbitration before a three-member panel of the American Arbitration Association. By that time, CBOP had paid the balance of what it owed Concrete Structures down to $2,178,720. However, Concrete Structures requested more than $28 million in damages, which included the outstanding balance, plus approximately $10 million in labor productivity damages and increased subcontractor costs, among others. CBOP counterclaimed

more than $3.5 million in damages due primarily to the extended duration of the concrete work. On June 19, 2019, the arbitration panel issued Concrete Structures an interim award of $10,629,741, which included the outstanding balance, $6,448,344 in labor productivity damages, and compensatory damages for extended project hours and other delays. The panel did not award CBOP any damages.

¶ 7    In its final arbitration decision on September 20, 2019, the panel reiterated its prior interim award and further awarded Concrete Structures $27,026.75 in attorney fees, which was only a fraction of what Concrete Structures requested, reasoning that CBOP's insurance carrier had already paid most of Concrete Structures' attorney fees.[3] It also awarded Concrete Structures 5% prejudgment interest for the period of time between the issuance of the interim award and the final award. Thus, the final award amounted to $10,656,767.75 plus 5% interest.

¶ 8    Concrete Structures filed a motion to confirm the arbitration award, which the circuit court granted on December 20, 2019. CBOP paid Concrete Structures the arbitration award in full. Concrete Structures, CBOP, and MPEA then filed cross-motions for summary judgment on counts I (accounting pursuant to section 23 of the Mechanics Lien Act) and III (payment bond claim against Concrete Structures' sureties), both of which the circuit court had stayed pending arbitration. The court denied Concrete Structures' motion for summary judgment, granted CBOP's and MPEA's cross-motions for summary judgment, and declined to award Concrete Structures further prejudgment interest and attorney fees. In this appeal, Concrete Structures challenges the circuit court's grant of summary judgment as to count III only.

---

[3]The panel's award of $27,026.75 in attorney fees was discretionary, not mandatory, and based on an American Arbitration Association construction industry arbitration rule.

¶ 9                                    ANALYSIS

¶ 10    On appeal, Concrete Structures argues that the circuit court erred in its summary judgment ruling that refused to award additional prejudgment interest and attorney fees.

¶ 11    Summary judgment is appropriate only when the pleadings, depositions, and affidavits show that there is no genuine issue of material fact. 735 ILCS 5/2-1005(c) (West 2022); *Onsen v. Commonwealth Edison Co.*, 261 Ill. App. 3d 271, 272 (1994). Summary judgment is proper when the parties agree on the material facts but disagree on the correct construction of a statute. *Onsen*, 261 Ill. App. 3d at 272. We review the circuit court's grant of summary judgment *de novo*. *Construction Systems, Inc. v. FagelHaber, LLC*, 2019 IL App (1st) 172430, ¶ 21 (citing *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)). *De novo* review means we engage in the same analysis as the circuit court. *Xuedong Pan v. King*, 2022 IL App (1st) 211482, ¶ 16.

¶ 12                              *Prejudgment Interest*

¶ 13    Concrete Structures contends that section 2 of the Interest Act allows it to recover prejudgment interest from when it filed this lawsuit on October 13, 2017, to when the circuit court confirmed the arbitration panel's final award on December 20, 2019 (rather than just the period between the panel's interim and final awards). Defendants argue that prejudgment interest begins to accrue when money becomes due under a bond, which did not occur, at the earliest, until the panel's interim award on June 19, 2019.

¶ 14    The Bond Act protects subcontractors by allowing them to sue on a project's payment bond if they believe they are owed payment. See 30 ILCS 550/2 (West 2022). The Bond Act provides that, regardless of the specific language of a bond, each bond is deemed to contain the following provision:

" 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " *Id.* § 1.

¶ 15    Section 2 of the Interest Act provides, in relevant part, as follows: "Creditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any bond ***." 815 ILCS 205/2 (West 2022).

¶ 16    "The fundamental principle of surety law is that the surety is bound by the terms of its contract." *People ex rel. Ryan v. Environmental Waste Resources, Inc.*, 335 Ill. App. 3d 751, 757 (2002). The language of the bond at issue provides that PD3 and the sureties must "[p]ay or arrange for payment of any undisputed amounts." Reading section 2 of the Interest Act in conjunction with the language of the bond, we find that prejudgment interest began accruing when the bond became "due," which was when the amount owed became undisputed. That occurred when the arbitration panel issued its interim award, which resolved the dispute as to how much defendants owed Concrete Structures. Accordingly, prejudgment interest began to accrue on June 19, 2019 (the day of the interim award).

¶ 17     Nonetheless, Concrete Structures believes that it should receive prejudgment interest for the time between its filing of the lawsuit on October 13, 2017, and December 20, 2019. Concrete Structures cites *Capital Development Board ex rel. P.J. Gallas Electrical Contractors, Inc. v. G.A. Rafael & Co.*, 143 Ill. App. 3d 553, 562 (1986), for the principle that a valid bond action "is based upon a bond and that the money was due." We do not disagree with this principle, but Concrete Structures has not shown that the "money was due" prior to June 19, 2019, such that would entitle it to prejudgment interest prior to that date. To the contrary, the parties vehemently disputed whether defendants owed Concrete Structures anything: Concrete Structures believed CBOP owed it over $28 million, while CBOP believed it owed Concrete Structures nothing and instead that Concrete Structures owed it $3.5 million. This dispute continued until the arbitration panel entered an interim award in Concrete Structures' favor on June 19, 2019.

¶ 18     Concrete Structures cites several other decisions, but they do not lend support to the argument that interest began to accrue on the date it filed the lawsuit. In *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 381-82 (1917), the United States Supreme Court held that interest began to accrue on the day that a bond claimant filed suit. However, in that case, the amount owed to the bond claimant was not in dispute. *Id.* at 382. By contrast, the amount here was in dispute until resolution by the arbitration panel. The United States Court of Appeals for the Seventh Circuit reached the same conclusion in *National Surety Co. v. McCormick*, 268 F. 185 (7th Cir. 1920). Though the court there also allowed interest from the commencement of the suit, there is no indication that the bond in that case conditioned payment on the existence of undisputed amounts. *Id.* at 190. Again, under our case law, we must adhere to the specific terms of the bond, which in this case require payment as to undisputed amounts only. See *Ryan*, 335 Ill. App. 3d at 757.

¶ 19    Concrete Structures also relies on *Cotton v. Coccaro*, 2023 IL App (1st) 220788. In that case, this court held that a defendant must "bear the full cost of his breach [of a contract]," which includes prejudgment interest. *Id.* ¶ 45. Again, we do not disagree with this principle. However, the defendant must first be in breach of the contract at issue. Here, under the terms of the bond, payment was not due until the amount owed was reduced to an undisputed amount. Again, this amount was determined by the arbitration panel on June 19, 2019.

¶ 20    In its brief, Concrete Structures claims: "Indeed, the Bond itself states that CBOP and the Sureties bind themselves 'to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract'—*regardless of whether such amounts are disputed or undisputed*." (Emphasis in original.). The emphasized portion is not part of the language of the bond. In fact, the actual language of the bond states the opposite of what Concrete Structures states. The relevant bond language provides:

> "§ 7 When a Claimant has satisfied [certain procedures], the Surety shall promptly and at the Surety's expense take the following actions:
>
> § 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and
>
> § 7.2 Pay or arrange for payment of any undisputed amounts."

The plain language of section 7.2 of the bond conditions the payment for labor, materials, and equipment on the existence of an undisputed amount, directly in contradiction to Concrete Structures' claim. This argument is therefore meritless.

¶ 21    The plain language of the bond states that the sureties' payment obligations are limited to undisputed amounts. Accordingly, the existence of undisputed amounts triggers the sureties'

obligations, and that is also the appropriate time for prejudgment interest to begin accruing. In this case, that occurred on June 19, 2019, when the arbitration panel resolved the dispute and issued its interim award in Concrete Structures' favor. Accordingly, we affirm the circuit court's summary judgment ruling that prejudgment interest began accruing on June 19, 2019.

¶ 22                                                    *Attorney Fees*

¶ 23    Concrete Structures also argues that the plain language of the bond at issue requires an award of additional attorney fees. Defendants contend that the bond allows attorney fees only if PD3 and the sureties violated the bond's terms, which has not occurred.

¶ 24    "[A]bsent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs." *Negro Nest, LLC v. Mid-Northern Management, Inc.*, 362 Ill. App. 3d 640, 641-42 (2005) (citing *Morris B. Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560, 572 (2000)). That is, a party cannot recover attorney fees unless "expressly authorized by a statute or agreement using specific language." *Id.* at 642 (citing *Estate of Downs v. Webster*, 307 Ill. App. 3d 65, 70 (1999)). Contractual provisions that allow the recovery of attorney fees should be strictly construed. *Id.* at 642 (citing *Helland v. Helland*, 214 Ill. App. 3d 275, 277-78 (1991)).

¶ 25    In this case, the bond includes a provision on attorney fees:

> "§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant."

¶ 26    We read section 7.3 in conjunction with section 7.1 and section 7.2, as section 7.3 provides remedies for a party's breach of section 7.1 or 7.2. Section 7.1 required defendants to "send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed." Section 7.2 of the bond required defendants to "pay or arrange for payment of any undisputed amounts." Concrete Structures argues that defendants failed to fulfill their obligations under both section 7.1 and section 7.2.

¶ 27    First, the record indicates that Concrete Structures filed its bond claim on July 31, 2017. In a letter dated August 8, 2017, and received by Concrete Structures on August 14, 2017, defendants responded to that claim as follows:

> "The information you have provided to date is not sufficient to establish liability under the bond. Therefore, we must inform you that at this time we consider no portion of the amount claimed to be undisputed. The basis for challenging the disputed amount is lack of substantiation. Therefore, to facilitate our independent investigation of the claim, we request that you fill out and return the enclosed claim form, attaching copies of all documents requested in the claim form."

¶ 28    Section 7.1 contains three requirements: that defendants (1) respond within 60 days (2) indicating the undisputed amounts and (3) stating the basis of a challenge to any disputed amounts. Defendants responded after approximately eight days, which is well within the 60-day response window. Defendants also indicated that they disputed the entire amount of Concrete Structures' claim. Finally, defendants provided a basis for disputing the amount of the claim by stating that Concrete Structures had not substantiated its claim and requested more information to

investigate the claim further. Based on the plain language of section 7.1 and the content of the defendants' response, we find that defendants fulfilled their section 7.1 obligations.

¶ 29    Second, we find that defendants did not breach section 7.2. Once the arbitration panel resolved the dispute as to the amount owed, CBOP promptly paid Concrete Structures. Because defendants did not breach either section 7.1 or section 7.2, they do not owe Concrete Structures any additional attorney fees under the bond. Accordingly, we affirm the circuit court's summary judgment ruling that Concrete Structures is not entitled to any additional attorney fees.

¶ 30                                    CONCLUSION

¶ 31    For these reasons, we affirm the circuit court's judgment.

¶ 32    Affirmed.

---

*Concrete Structures/Sachi, J.V. v. Clark/Bulley/OVC/Power*, **2024 IL App (1st) 240082**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2017-CH-13778; the Hon. Anthony C. Kyriakopoulos, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Ryan A. Hiss and Erin E. Krejci, of Laurie & Brennan, LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Daniel G. Rosenberg, Josh M. Leavitt, Joanne A. Sarasin, and Patrick B. Barnett, of Much Shelist, P.C., of Chicago, for appellees Clark/Bullley/OVC/Power, Prairie District 3 Partners, Clark Construction Group, LLC, Bulley & Andrews, Old Veteran Construction, Inc., McKissack & McKissack Midwest, Inc., Goettsch Partners, Inc., Moody Nolan, Inc., and Powers and Sons Construction Company, Inc. <br><br> No brief filed for other appellees. |