2021 IL App (4th) 200369

NOS. 4-20-0369, 4-20-0383, 4-20-0384 cons.

FILED
March 2, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CAMILLE MAYFIELD COOPER BROTZE and WAYNE BROTZE, Husband and Wife, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | Macoupin County |
| v. | ) | Nos. 18L5 |
| THE CITY OF CARLINVILLE, ILLINOIS, a | ) | 19MR92 |
| Municipal Corporation; THE VILLAGE OF | ) | |
| DORCHESTER, ILLINOIS, a Municipal Corporation; | ) | |
| JERSEY COUNTY RURAL WATER COMPANY, | ) | |
| INC., an Illinois Not-For-Profit Corporation; and | ) | |
| ILLINOIS ALLUVIAL REGIONAL WATER | ) | |
| COMPANY, INC., an Illinois Not-For-Profit | ) | |
| Corporation, | ) | |
| Defendants | ) | |
| | ) | |
| (Illinois Alluvial Regional Water Company, Inc., | ) | |
| Defendant-Appellant). | ) | |
| | ) | |
| | ) | |
| CAMILLE MAYFIELD COOPER BROTZE and | ) | |
| WAYNE BROTZE, Husband and Wife, | ) | Honorable |
| Plaintiffs-Appellees, | ) | April Troemper, |
| v. | ) | Judge Presiding. |
| THE CITY OF CARLINVILLE, ILLINOIS, a | ) | |
| Municipal Corporation, | ) | |
| Defendant-Appellant. | ) | |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        For several years, the City of Carlinville, Illinois (Carlinville), has been urgently

searching for a sustainable, cost-effective, and long-term supply of potable water. In an attempt to

solve its problem, Carlinville joined with the nearby Village of Dorchester, Illinois (Dorchester), and Jersey County Rural Water Company (Jersey Water), a not-for-profit corporation, to form another not-for-profit corporation: Illinois Alluvial Regional Water Company (Alluvial). Once formed, Alluvial received approval for tens of millions of dollars in grants and loans from federal agencies to build the infrastructure necessary to provide its members (Carlinville, Dorchester, and Jersey Water) with potable water.

¶ 2        In these consolidated cases, Carlinville residents Camille Mayfield Cooper Brotze and Wayne Brotze (the Brotzes), contend that Carlinville may not lawfully form and participate in Alluvial. The trial court agreed, entered summary judgment in favor of the Brotzes, and concluded that Alluvial was an illegal company. We disagree and reverse.

¶ 3                                I. BACKGROUND

¶ 4        The procedural history of this case is complicated and mostly irrelevant to our resolution of the issues on appeal. Accordingly, we set forth only the information necessary to understand the procedural context in which this case arrives before this court.

¶ 5                A. The Complaint (Macoupin County Case No. 18-L-5)

¶ 6        In February 2018, the Brotzes filed a complaint against defendants, Carlinville, Dorchester, Jersey Water, and Alluvial. The complaint stated that (1) Alluvial was incorporated in December 2017 and its sole members were Carlinville, Dorchester, and Jersey Water and (2) Alluvial's purpose was to use an underground aquifer to develop a supply of potable water for the surrounding counties. The complaint alleged that (1) Alluvial was not formed pursuant to any of the statutory methods provided by law for municipalities to create a water supply and (2) none of the defendants had entered into any contracts or intergovernmental agreements prior to forming Alluvial.

¶ 7　　　　　The complaint further alleged that Carlinville had received grant money from a federal agency for the purpose of exploring engineering options to develop a "viable water supply, treatment, and transmission system" to serve multiple counties. Carlinville had appropriated its own funds as well as this grant money for use by Alluvial, while Dorchester provided its own funds to Alluvial. The complaint asserted that Carlinville and Dorchester had no constitutional or statutory authority to join with Jersey Water to form another private company to solve their water problems or to fund such a private company. Further, the Brotzes claimed Alluvial was formed to "circumvent Illinois Sunshine laws like the Open Meetings Act." The Brotzes sought a declaratory judgment that Carlinville and Dorchester could not participate in the formation or continued funding and operation of Alluvial.

¶ 8　　　　　In April and May 2018, Carlinville, Dorchester, and Jersey Water filed motions to dismiss, asserting, in relevant part, that the Brotzes lacked standing to bring their claims.

¶ 9　　　　　In May 2018, Alluvial filed an answer to the complaint in which it denied that Carlinville, Dorchester, and Jersey Water lacked the power to form Alluvial. Alluvial further requested a declaratory judgment in its favor that it was properly formed pursuant to section 10(a) of article VII of the Illinois Constitution. Ill. Const. 1970, art. VII, § 10(a). Alluvial also alleged that the Brotzes lacked standing to sue Alluvial because (1) Alluvial was a private company not subject to public access and disclosure laws and (2) the Brotzes had no relationship with Alluvial. That same month, Alluvial filed a motion for summary judgment based on its argument that section 10(a) authorized Alluvial's formation.

¶ 10　　　　　In June and July 2018, the parties fully briefed the pending dispositive motions, and in August 2018, the trial court conducted a hearing before taking the motions under advisement. In January 2019, the court entered a written order in which it concluded that the Brotzes lacked

standing to bring suit against Dorchester and Jersey Water and dismissed the claims against them. The court also dismissed the claims against Alluvial for lack of standing—despite Alluvial not filing such a motion—because Alluvial had raised standing in its answer and had argued the Brotzes lacked standing during oral arguments. The court denied Alluvial's motion for summary judgment as moot.

¶ 11        Regarding Carlinville, the trial court concluded that the Brotzes had standing to sue and permitted the Brotzes to file an amended complaint.

¶ 12        B. The Amended Complaint (Macoupin County Case No. 19-MR-92)

¶ 13        In July 2019, the Brotzes filed an amended complaint seeking *mandamus*. The case was given an "MR" case number, but the court subsequently consolidated the two suits (that is, it consolidated the MR case with the previously filed L case). The amended complaint named only Carlinville as a defendant and contained many of the same allegations explaining the formation of Alluvial as the initial complaint. The amended complaint further alleged that Carlinville did not have the authority under the Illinois Constitution or state law to form Alluvial and its doing so was an unlawful attempt to avoid transparency, public oversight, and statutory duties, such as those imposed by the Open Meetings Act. The Brotzes contended that without a *mandamus* order they would have no ability to "challenge Carlinville's abuse of authority regarding *** the creation, funding, and operation of Illinois Alluvial."

¶ 14        In April 2020, Carlinville filed a motion for summary judgment. Relevant to this appeal, Carlinville asserted that section 10(a) of article VII of the Illinois Constitution granted it the authority to "contract and otherwise associate with *** corporations in any manner not prohibited by law or ordinance." Ill. Const. 1970, art. VII, § 10(a). Because the plain meaning of the term "associate" included joining together with another, Carlinville asserted that it was

- 4 -

authorized to join with Dorchester and Jersey Water to form Alluvial so long as such action was not prohibited by law. Carlinville also asserted that (1) the Illinois Municipal Code granted Carlinville and Dorchester the authority to construct and maintain facilities for supplying potable water (see 65 ILCS 5/11-125-1 *et seq.* (West 2016)) and (2) the Brotzes had not pointed to any statute or ordinance that prohibited Carlinville's actions.

¶ 15　　　　Later in April 2020, the Brotzes filed a cross-motion for summary judgment, arguing that section 7 of article VII, when read in conjunction with section 10 and applicable state laws, demonstrated that Carlinville could exercise "only powers granted to [it] by law." Ill. Const. 1970, art. VII, § 7. The Brotzes contended that section 7 was the embodiment of "Dillon's Rule," which required municipal powers to be construed strictly against the municipality (see *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 111-12, 510 N.E.2d 858, 860-61 (1987)), and section 10 did not grant Carlinville any new power that was not expressly granted by law. The Brotzes maintained that the legislature had enumerated several different statutory methods by which Carlinville could address its water problems. Because Carlinville attempted to use a method not expressly authorized by statute, Dillon's Rule applied and prevented Carlinville from joining with Dorchester and Jersey Water to form Alluvial.

¶ 16　　　　In addition, the Brotzes explained that Carlinville had not demonstrated that it complied with section 10(a) because "[t]his case does not concern an intergovernmental agreement or even a contract of any kind." In particular, Alluvial was not incorporated until December 2017. Accordingly, "[t]here was no entity for Carlinville to associate with or contract with when [Carlinville] took its vote to participate in and fund Illinois Alluvial in October 2017."

¶ 17　　　　　　　　　　C. The Trial Court's Ruling

¶ 18　　　　In June 2020, the trial court conducted a hearing on the parties' motions for

- 5 -

summary judgment, and in July 2020, the trial court entered a written order granting summary judgment in favor of the Brotzes. The court identified "[t]he only issue *** [as] whether Defendant Carlinville had constitutional and statutory authority to join with another non-home rule municipality and a not-for-profit corporation to form and operate Illinois Alluvial." The court examined the language of section 10(a) and emphasized that the first sentence of that section stated that units of local government "may contract *or* otherwise associate among themselves," while the second sentence stated that units of local government "may contract *and* otherwise associate with" private parties. (Emphases in original.) The court reasoned that the use of a different word in each sentence meant the drafters intended a different result and the court could not interpret the provision in a manner that rendered any word superfluous.

¶ 19        The trial court determined that units of government "may choose between a contract or another form of association when dealing with other units of local government." But, when dealing with private corporations, the court concluded "there must be both a contract and a type of association for the constitutional requirement to be fulfilled." The court noted that Carlinville, Dorchester, and Jersey Water never entered into any contract at all, including one to form Alluvial. The court maintained that Dillon's Rule, as expressed in section 7, continued to apply and Carlinville was not allowed to create a new method of obtaining water when the legislature provided multiple options for the same by statute. The court concluded that even though Carlinville "could have *associated* with *** Dorchester *and contracted* with [Jersey Water] for purposes of creating a potable water supply," those three entities could not "create a brand new, private not-for-profit corporation for purposes of ultimately selling water without public input" because such action was "inconsistent with the Illinois Constitution" and "was an attempt to circumvent the [legislature's] grant of authority." (Emphases in original.) Because Carlinville acted without

authorization, the court declared Alluvial was "a void corporation" and entered summary judgment in favor of the Brotzes.

¶ 20                                    D. The Present Appeals

¶ 21            In August 2020, Carlinville filed a notice of appeal, and within 10 days, Alluvial filed a notice to appeal pursuant to Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017) in both the MR case and the L case. Due to the unusual procedural posture in the trial court, three separate appeals were docketed in this court. Alluvial moved to consolidate the cases, but because of the absence of a record on appeal at that time, this court consolidated only Alluvial's appeals (Macoupin County case Nos. 4-20-0383 and 4-20-0384) and invited counsel to move for consolidation with Carlinville's appeal (Macoupin County case No. 4-20-0369) again after briefing. No such motion was filed.

¶ 22            In January and February 2021, this court conducted two separate oral arguments, one involving Alluvial and another involving Carlinville. Because our resolution of the central issue in these cases controls the result in each appeal, we now consolidate these cases on our own motion.

¶ 23                                    II. ANALYSIS

¶ 24            Carlinville and Alluvial appeal, arguing, in relevant part, (1) the trial court's interpretation of section 10(a) was erroneous and (2) under the correct interpretation, they were entitled to summary judgment in their favor. We agree and reverse.

¶ 25                        A. The Applicable Law and Standard of Review

¶ 26                                    1. *Summary Judgment*

¶ 27            Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "When, as here, parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that the case may be resolved as a matter of law." *Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶ 18, 160 N.E.3d 916. Issues involving statutory construction, the applicability and effect of constitutional provisions, and whether summary judgment should have been allowed in a case all present questions of law, which this court reviews *de novo*. *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254-55, 790 N.E.2d 832, 840 (2003).

¶ 28                                     2. *Interpretation of Constitutional Provisions*

¶ 29          Resolution of this case requires an interpretation of two provisions of the Illinois Constitution pertaining to local government. "In construing a constitutional provision, our primary goal is to ascertain and give effect to the common understanding of the citizens who adopted it, and courts look first to the plain and generally understood meaning of the words used." *Blanchard v. Berrios*, 2016 IL 120315, ¶ 16, 72 N.E.3d 309. "In addition, it is proper to consider constitutional language in light of the history and condition of the times, and the particular problem which the [constitutional] convention sought to address ***." (Internal quotation marks omitted.) *Kanerva v. Weems*, 2014 IL 115811, ¶ 36, 13 N.E.3d 1228.

¶ 30                                      3. *The Provisions at Issue*

¶ 31          Section 7 of article VII states the following: "Counties and municipalities which are not home rule units shall have only powers granted to them by law and the powers [set forth in section 7]." Ill. Const. 1970, art. VII, § 7. The rule encompassed in section 7 is commonly called "Dillon's Rule"—named after the nineteenth century jurist who popularized the rule—and stands for the proposition that municipalities cannot act unless they have a specific grant of authority

from the legislature. See *Village of Sherman v. Village of Williamsville*, 106 Ill. App. 3d 174, 179, 435 N.E.2d 548, 551 (1982). Prior to 1970, Illinois strictly applied Dillon's Rule. See, *e.g.*, *Elsenau v. City of Chicago*, 334 Ill. 78, 81, 165 N.E. 129, 130 (1929).

¶ 32    In 1970, section 10 of article VII was added, which provides in pertinent part as follows:

> "Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts, and with the United States to obtain or share services and to exercise, combine, or transfer any power or function, in any manner not prohibited by law or by ordinance. Units of local government and school districts may contract and otherwise associate with individuals, associations, and corporations in any manner not prohibited by law or by ordinance." Ill. Const. 1970, art. VII, § 10(a).

¶ 33                          B. This Case

¶ 34    This court has recognized that the delegates drafted section 10(a) with Dillon's Rule in mind, or, more specifically, with *ending* Dillon's Rule, at least in certain circumstances. See *Village of Sherman*, 106 Ill. App. 3d at 179 ("Article VII, section 10, eliminated the effect of 'Dillon's Rule' in construing intergovernmental agreements."); *Connelly v. County of Clark*, 16 Ill. App. 3d 947, 951, 307 N.E.2d 128, 131 (1973) ("Thus[,] Dillon's Rule of strictly construing legislative grants of authority to local governmental units has been abrogated by section 10 *** when local governments voluntarily cooperate ***.").

¶ 35    In *Sherman* and *Connelly*, this court reviewed the drafting process and report of proceedings to reach our conclusion. See *Village of Sherman*, 106 Ill. App. 3d at 178-79; *Connelly*,

16 Ill. App. 3d at 950-51. On first reading, the second sentence of section 10(a) was not present, and an amendment to add similar language was defeated by a tie vote. 4 Record of Proceedings, Sixth Illinois Constitutional Convention 3425-29 (hereinafter Proceedings); see also Joan G. Anderson & Ann Lousin, *From Bone Gap to Chicago: A History of the Local Government Article of the 1970 Illinois Constitution*, 9 J. Marshall J. Prac. & Proc. 697, 793 (1976). On second reading, the drafters amended that section to include the following, "Where authorized by law, units of local government and school districts may contract and otherwise associate with individuals, associations, and corporations." 5 Proceedings 4165. However, on third reading, the drafters amended the second sentence to its present form—that is, the phrase "when authorized by law" was deleted and the phrase "in any manner not prohibited by law or by ordinance" was added. 5 Proceedings 4444-46. Thus, the interpretation advocated for by the Brotzes was present at the second reading, but the convention rejected that interpretation and replaced it with text that reverses Dillon's Rule.

¶ 36       In this case, the Brotzes maintain that Dillon's Rule is still applicable notwithstanding section 10. The Brotzes employ the canon of construction "*expressio unius*"—the expression of one is to the exclusion of others—to support their claim that Carlinville was only permitted to address its water problems in one of the five ways prescribed by statute. We disagree.

¶ 37       As we just explained, section 10(a) reverses Dillon's Rule when municipalities enter into intergovernmental agreements to exercise the powers they are provided by law. Contrary to the Brotzes claims, the defendants' interpretation of section 10(a) does not grant power over new subject matters. See *People ex rel. Devine v. Suburban Cook County Tuberculosis Sanitarium District*, 349 Ill. App. 3d 790, 798 n.3, 812 N.E.2d 679, 686 n.3 (2004) (explaining that contracts and associations under section 10(a) are limited to subject matters over which the municipality has

been granted authority). Instead, section 10(a) expands the *methods* by which units of local government may exercise the powers granted to them by law—namely, by contracting and otherwise associating with other public and private entities "in any manner *not prohibited* by law or by ordinance." (Emphasis added.) Ill. Const. 1970, art. VII, § 10(a).

¶ 38        All parties agree that Carlinville could build and maintain a water supply, and the same is true of every other defendant. See 65 ILCS 5/11-124-1 to 11-126-7 (West 2016); 65 ILCS 5/11-125-1 *et seq.* (West 2016) (granting municipalities the authority to construct wells, reservoirs, and waterworks); see also 805 ILCS 105/103.05(a)(23) (West 2016) (permitting not-for-profit corporations to be organized for the purpose of owning and operating water supply facilities on a mutual cooperative basis). The Brotzes do not point to any statute or ordinance that prohibits Carlinville from joining together with other municipalities and nonprofits, each of which has the power to do individually what they wish to do collectively, to create a company to build and maintain a water supply for its members. Because the Brotzes cannot do so, we conclude that the trial court should have granted Carlinville's motion for summary judgment.

¶ 39        As an alternative, the Brotzes attempt to defend the trial court's reading of section 10(a). The court emphasized that when dealing with public entities, section 10(a) states, "may contract *or* otherwise associate," whereas when discussing private entities, section 10(a) states, "may contract *and* otherwise associate." (Emphases added.) See Ill. Const. 1970, art. VII, § 10(a). Because the constitution uses the conjunction "and" instead of "or," the court concluded that Carlinville was required to enter into a contract *and* associate with private entities. Carlinville conceded that it had not entered into any contracts, and the court found the formation of Alluvial unconstitutional. (We note that Carlinville argued that the articles of incorporation and bylaws of Alluvial were such contracts, but the court rejected this assertion. We need not address this

- 11 -

argument on appeal.)

¶ 40　　　　　The trial court's reading of section 10(a) is simply incorrect. We acknowledge that "and" is frequently used in statutes to signify that all of the listed factors must be present. See, *e.g.*, *Soh v. Target Marketing Systems, Inc.*, 353 Ill. App. 3d 126, 131, 817 N.E.2d 1105, 1109 (2004) (use of "and" required all factors listed in section 2 of the Wage Act to be present). However, "and" is also frequently used as a coordinating conjunction to "join[ ] together words or word groups of equal grammatical rank." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/coordinating%20conjunction (last visited Feb. 26, 2021) [https://perma.cc/797D-PLHZ]. This usage is why the Illinois Supreme Court has repeatedly "recognized that 'and' is often used interchangeably with 'or,' the meaning being determined by the context." *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 606, 900 N.E.2d 1095, 1102 (2008). Further, such usage is most logical considering the context in this case that (1) "and" follows the word "may," (2) "and" is used to link "contract" with "*otherwise* associate," and (3) the sentence ends with the phrase "in *any manner* not prohibited by law or by ordinance." (Emphases added.) See Ill. Const. 1970, art. VII, § 10(a).

¶ 41　　　　　For example, imagine a family visiting a public lake for recreation. Upon entering, a sign states in bold lettering, "Visitors to the lake may boat, fish, swim, and otherwise enjoy the lake in any manner not prohibited by park rules." No reasonable speaker of English would understand the sign to say visitors may swim but only if they also boat and fish and enjoy themselves. To do so, one would have to ignore the words "may," "otherwise," and "in any manner." With the addition of those words, every reader would know that visitors may do (1) any one of those activities, (2) all of them, (3) any other activity so long as it is not prohibited, or (4) any combination thereof. Likewise, in section 10(a), units of local government may contract,

associate, or contract and associate with private entities. By using a strict interpretation of "and," the trial court rendered the words "otherwise" and "in any manner" superfluous.

¶ 42 Our understanding of the plain language is confirmed by our prior cases that examined the constitutional debates. See *Village of Sherman*, 106 Ill. App. 3d at 178-79; *Connelly*, 16 Ill. App. 3d at 950-51. The problem the convention was attempting to solve was that non-home-rule units of government had to get legislative approval before taking action to address local government problems, which led to delay and awkward workarounds. *Connelly*, 16 Ill. App. 3d at 957 (Craven, P.J., concurring in part and dissenting in part). The delegates were eager to remove this barrier so that units of local government at all levels could cooperate and associate to address problems without legislative authorization. *Id.* at 950-51 (majority opinion). This is why the language "in any manner not prohibited by law" was employed. (Internal quotation marks omitted.) *Id.* at 950. The clear purpose of section 10 was to allow local governments "maximum flexibility" to address local issues (internal quotation marks omitted) (*id.*) and to use any method "unless the General Assembly says you can't" (internal quotation marks omitted) (*Village of Sherman*, 106 Ill. App. 3d at 179). The Brotzes offer no justification whatsoever for limiting this clear rationale from our cases to cooperation only between units of local government.

¶ 43 For the reasons stated, we conclude that the trial court erred by granting summary judgment in favor of the Brotzes and denying summary judgment for Carlinville. Accordingly, we reverse the trial court's judgment and remand the case with instructions to enter summary judgment in favor of Carlinville.

¶ 44 Prior to briefing, Alluvial filed a motion to strike, asking this court to strike the portion of the trial court's order that declared Alluvial a void corporation. We took that motion with the case and now deny it as moot. Because we conclude that nothing prohibited defendants

from forming Alluvial, our reversal of the trial court's judgment necessarily includes a determination that Alluvial is not a void company. As part of our directions, on remand, the trial court shall vacate its prior order, enter summary judgment in favor of Carlinville consistent with the reasoning of this opinion, and make clear that Alluvial may continue operating as a valid corporation.

¶ 45                              III. CONCLUSION

¶ 46        For the reasons stated, we reverse the trial court's judgment and remand the case with directions for the trial court to (1) vacate its July 7, 2020, judgment in its entirety, (2) enter summary judgment in favor of Carlinville, and (3) as part of that judgment, make clear that Alluvial may continue to operate as a valid corporation.

¶ 47        Reversed and remanded with directions.

**No. 4-20-0369**

| | |
|---|---|
| **Cite as:** | *Brotze v. City of Carlinville*, 2021 IL App (4th) 200369 |
| **Decision Under Review:** | Appeal from the Circuit Court of Macoupin County, Nos. 18-L-5, 19-MR-92; the Hon. April Troemper, Judge, presiding. |
| **Attorneys for Appellant:** | David M. Foreman, of Foreman & Kessler, Ltd., of Salem, for appellant Illinois Alluvial Regional Water Company, Inc.<br><br>John M. Gabala, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, and Dan O'Brien, of Carlinville, for other appellant. |
| **Attorneys for Appellee:** | Jacob N. Smallhorn and Garth E. Flygare, of Smallhorn Law LLC, of Charleston, for appellees. |
| *Amicus Curiae***:** | Tracy A. Willenborg and Kara J. Wade, of Taylor Law Offices, P.C., of Effingham, for *amicus curiae* EJ Water Cooperative, Inc. |